**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                          |                               |
|--------------------------|-------------------------------|
| UNITED STATES OF AMERICA |                               |
| v.                       |                               |
|                          | Criminal Action No. 25-292    |
|                          | (EGS)                         |
| JORDAN HOLLEY            |                               |
| Defendant.              |                               |

**<u>MEMORANDUM OPINION</u>**

Pending before the Court is Defendant Jordan Holley's ("Mr. Holley") Motion to Reinstate Order of Release ("Mot. to Reinstate"). *See* Mot. to Reinstate, ECF No. 18. Mr. Holley is charged with one count of Travel With Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b). The government sought pretrial detention, but on September 15, 2025, Magistrate Judge Matthew Sharbaugh denied the request and released Mr. Holley to the High Intensity Supervision Program with Home Incarceration. *See* Order, ECF No. 9 at 2. The government moved for review and appeal of the release order, *see* Mot. for Review and Appeal of Release Order, ECF No. 8; and Chief Judge James Boasberg granted the government's motion, ordering Mr. Holley detained. *See* Minute Entry (Sept. 18, 2025). Thereafter, Mr. Holley filed the pending Motion to Reinstate.

*See* Mot. to Reinstate, ECF No. 18. The government opposed the motion and also filed a Supplement of Additional Facts. *See* Gov't Opp'n, ECF No. 20; Gov't Suppl., ECF No. 24. Mr. Holley filed a Reply, in response to which the government filed a Surreply. *See* Def.'s Reply, ECF No. 26; Gov't Surreply, ECF No. 28. The Court held a Detention Hearing ("Hearing") on Mr. Holley's motion on October 28, 2025, at the conclusion of which it informed the parties that it would take the matter under advisement.

Upon careful consideration of Mr. Holley's motion, the government's opposition and supplement thereto, the reply, the surreply, the Magistrate Judge and Chief Judge detention decisions, the parties' arguments at the Hearing, the entire record, and for the reasons discussed in this Memorandum Opinion, the Court **DENIES** the motion and orders Mr. Holley detained pending trial.

## I.    Background

### A. Factual Background

On August 28, 2025, Mr. Holley initiated a private chat with a Federal Bureau of Investigation ("FBI") Task Force Officer in an undercover capacity ("the UC") on a fetish website. *See* Aff. in Supp. of Criminal Compl., ECF No. 2-1 at 3.[1]

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF header page number, not the page number of

The following is an excerpt from the exchange between Mr. Holley ("FeetAddict202") and the UC, in which the two refer to the purported nine-year-old daughter of the UC:

> FeetAddict202: If you ever want to teach her about BBC2[2] or cock in general, use me as a stunt cock for her practice.
>
> UC: lol i think we might be liked minded
>
> FeetAddict202: When I saw your post I figured we would be. Too many bulls scared to doit but im not. If you're going to introduce your daughter to the world of BBC and cock, why not have a real one for her to use as practice
>
> FeetAddict202: I am Brutus, and ill be your BBC you have your daughter practice with as you watch. How's that for kinky fun? (wink emoji)
>
> UC: where else do you like to chat I like where this is going
>
> FeetAddict202: "Kik, telegram, my number, even email. Pick any. I'm serious about this. Live action porn in your own home. Me and her. Our secret fun time."
>
> UC: whats your number
>
> FeetAddict202: 443-834-8508

The conversation then moved to text:

> UC: Yes not fantasy right
>
> HOLLEY: Correct. Real life. I have experience with daughters and fathers, you found the right bull for the job
>
> UC: Ok any age limits before we discuss my girl not trying to get caught up
>
> HOLLEY: No sir. Only a number for me

---

the filed document.

[2] According to the government, "BBC" is commonly used to refer to "Big Black Cock." Aff. in Supp. of Criminal Compl., ECF No. 2-1. at 3.

UC: Fuck yeah we are very like minded

HOLLEY: Perfect. I understand wanting to be careful. Most wouldn't do this but I am a special bull. 1 for families. Even when divorced. A father deserves to know how his daughter handles cock

UC: Well to be honest she plays with mine and had an old college buddy in town about six months ago and loved watching her sucking his cock

HOLLEY: That's real hot. A true good daughter. Is she a virgin or has that been taken care of?

*Id.* at 3-5. Mr. Holley and the UC described in graphic detail plans for Mr. Holley to have sex with the UC's purported nine-year-old daughter. *See id.* at 5. The UC sent a picture of his purported daughter to Mr. Holley, to which he responded "Oh wow, thats perfect honestly. I am built just right for her," and sent a photo of his erect penis. *Id.*

Mr. Holley and the UC arranged a time and place to meet at the UC's purported residence in Washington, D.C. ("D.C.") for Mr. Holley to engage in vaginal intercourse with the UC's purported child. *See id.* On September 10, 2025, Mr. Holley met with the UC, confirmed his online name, and the UC subsequently placed him under arrest. *Id.* at 6. Following his arrest, Mr. Holley waived his Miranda rights and gave a statement. *Id.* Mr. Holley stated that he had traveled to D.C. to find out more about the UC "but that he planned to call law enforcement and not go through with it." *Id.* at 7. A mask, sex toys, and lubricant were recovered in Mr. Holley's vehicle. *Id.*

Following Mr. Holley's arrest, the FBI began searching Mr. Holley's electronic devices. *See* Gov't Opp'n, ECF No. 20 at 9. Between September 30, 2023 and February 27, 2024, Mr. Holley exchanged texts with a woman, S-1, and claimed in various texts that he had had sex with children ages 8, 10, 11, 13, and 16. *See id.* at 9-10. Between February 5, 2025 and February 14, 2025, Mr. Holley exchanged texts with a woman, S-2, and described in graphic and violent terms how he would rape her seven-year-old daughter. *See id.* at 10. He also told S-2 that he had had sex with a nine-year-old child. *See id.* at 11.

On October 6, 2025, the FBI notified the government that it had completed its review of the devices. *See* Gov't Suppl., ECF No. 24 at 1. The government states that "[n]o material that was clearly child sexual abuse material was discovered on the phone." *Id.* However, in several chats, Mr. Holley discussed the sexual abuse of children. For example, between November 8, 2024 and February 7, 2025, Mr. Holley communicated with a woman, S-3, and the two discussed having children together and having Mr. Holley sexually abuse children starting at age eight. *See id.* at 1. Between September 2024 and December 2024, Mr. Holley communicated on multiple occasions with a man, S-6, who stated he was interested in Mr. Holley coming to his home and having sex with his wife and three minor children aged 16 (female), 14 (female), and 11 (male). *Id.* at 3. Mr. Holley described in

graphic and violent terms orally, vaginally, and anally raping the children, and choking and slapping them. *See id*. at 3-4. Mr. Holley also discussed recording the abuse while he and the children wore ski masks. *See id*. at 4. S-6 stopped sending messages to Mr. Holley on December 4, 2024, but Mr. Holley continued to send him messages through August 13, 2025. *Id*. at 5.

The parties do not dispute the contents of the online communications. *See* Mot. to Reinstate, ECF No. 18; Gov't Opp'n, ECF No. 20; Gov't Suppl., ECF No. 24; Def.'s Reply, ECF No. 26; Gov't Surreply, ECF No. 28.

### B. Procedural History

Mr. Holley appeared before Magistrate Judge Sharbaugh on September 11, 2025. *See* Minute Entry (Sept. 11, 2025). The government sought pretrial detention, and Magistrate Judge Sharbaugh released Mr. Holley on September 15, 2025 to home incarceration under the supervision of his parents with the following additional conditions: (1) the Defendant will be referred for a Mental Health Assessment; (2) removal of desktop computer from residence; (3) home visits by US Parole and Probation for Maryland to the extent practicable; (4) the Defendant may not have access to smart devices that can access the Internet or use smart televisions alone; (5) all devices in the residence must be password protected; (6) Defendant's

parents' cellphones must be on their person at all times or locked in a safe; (7) the Defendant may not have access to any electronic device; (8) electronic devices not in active use must be locked in a safe; (9) an alarm system must be set to indicate entry and exit from the residence; (10) custodians must conduct random searches on the Defendant and his property at least twice per week to determine that he does not have any electronic devices; (11) the home WiFi password must be changed and not shared with the Defendant; and (12) compliance with all rules and regulations of supervising agency. *See* Order, ECF No. 9. Magistrate Judge Sharbaugh entered the Order based on information in the Criminal Complaint and Affidavit in Support of a Criminal Complaint; he did not have the information in the government's supplemental filing. *See* Rough Transcript of Hr'g (Oct. 28, 2025) ("Hr'g Tr.") at 43:23-44:16.

The government filed a Motion for Review and Appeal of Release Order on September 16, 2025. *See* Mot. for Review and Appeal of Release Order, ECF No. 8. The parties appeared before Chief Judge Boasberg on September 18, 2025, and Chief Judge Boasberg ordered Mr. Holley detained. *See* Minute Entry (Sept. 18, 2025). When he made this decision, Chief Judge Boasberg had before him additional online conversations set forth in the government's opposition, *see* Gov't Opp'n, ECF No. 20 at 9-11; he

did not have the information in the government's supplemental
filing that is before this Court. *See* Hr'g Tr. at 44:17-18.

Mr. Holley was indicted on one count of Travel With Intent
to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. §
2423(b) on September 19, 2025. *See* Indictment, ECF No. 12. On
September 29, 2025, Mr. Holley filed the Motion to Reinstate,
asking this Court to reinstate the original release conditions
imposed by Magistrate Judge Sharbaugh. *See* Mot. to Reinstate,
ECF No. 18. The government opposed and filed a supplement of
additional facts. *See* Gov't Opp'n, ECF No. 20; Gov't Suppl., ECF
No. 24. Mr. Holley filed a reply, to which the government filed
a surreply. *See* Def.'s Reply, ECF No. 26; Gov't Surreply, ECF
No. 28.

The Court held a Detention Hearing on October 28, 2025,
which was attended by Mr. Holley, the government, and Pretrial
Services Agency ("Pretrial") staff. The parties proceeded by
proffer and did not call any witnesses. Mr. Holley entered into
the record a letter from Dr. Hildembrand Forensic Psychology
Consulting, LLC stating that she had been retained by defense
counsel to complete a pretrial psychosexual risk assessment for
Mr. Holley, should he be released. Hr'g Tr. at 4:18-23. Mr.
Holley's parents were also present, and at times counsel for Mr.
Holley conferred with Mr. Holley's parents on matters related to

the proposed release conditions. At the conclusion of the Hearing, the Court took the matter under advisement.

## II.  Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The "provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception." *Id.* The Act provides that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1), (f)(2)(g). The danger a person poses to the community is a sufficient reason to order pretrial detention. *Salerno,* 481 U.S. at 754-55; *United States v. Simpkins*, 826 F.2d 94, 98 (D.C. Cir. 1987).

The government bears the burden of showing that no condition or combination of conditions can mitigate danger to the community based on clear and convincing evidence. *See United States v. Munchel*, 991 F.3d 1273, 1279-80 (D.C. Cir. 2021); 18 U.S.C. § 3412(f) (articulating clear and convincing evidence standard for dangerousness determination). "[I]n determining whether there are conditions of release that will reasonably

assure the appearance of the person . . . and the safety of . .
. the community", *see* 18 U.S.C. § 3142(g); courts consider four
factors: "(1) the nature and circumstances of the offense
charged, (2) the weight of the evidence against the person, (3)
the history and characteristics of the person, and (4) the
nature and seriousness of the danger to any person or the
community that would be posed by the person's release." *Munchel*,
991 F.3d at 1279 (internal quotations omitted). The Court of
Appeals for the District of Columbia Circuit ("D.C. Circuit")
explains that "a defendant's detention based on dangerousness
accords with due process only insofar as [her] history,
characteristics, and alleged criminal conduct make clear that
... she poses a concrete, prospective threat to public safety."
*Id.* at 1280; *see id.* at 1282 (explaining that government must
demonstrate defendant's "identified and articulable threat to
the community").

    "When there is probable cause to believe that the defendant
committed an offense involving a minor victim under 18 U.S.C. §
2252(a)(2), as here, there is a rebuttable presumption that 'no
condition or combination of conditions will reasonably assure
... the safety of the community.'" *United States v. Farina*, No.
25-cr-232, 2025 WL 2651249, *2 (D.D.C. Sept. 16, 2025)(quoting
18 U.S.C. § 3142(e)(3)(E)). "Once the rebuttable presumption is
triggered, 'the defendant bears the burden of production to

offer some credible evidence contrary to the statutory presumption.'" *Id.* (citing *United States v. Blanchard,* No. 18-MJ-101, 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)). "The defendant may carry this burden by coming forward with some evidence that he will not ... endanger the community if released." *Id.* (quoting *United States v. Garner*, No. CR 24-533, 2025 WL 1575848, at *3 (D.D.C. Mar. 11, 2025) (citation omitted)). "If the defendant rebuts the presumption 'the presumption is not erased but rather remains in the case as an evidentiary finding militating against release to be weighed along with other evidence.'" *Id.*

At the detention hearing, "[t]he person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f). Furthermore, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.*

### III. Analysis

Mr. Holley does not contest that the rebuttable presumption in § 3142(e)(3)(E) applies here. *See* Mot. to Reinstate, ECF No. 18 at 4-6. Rather, he argues that the rigorous release

conditions Magistrate Judge Sharbaugh imposed will reasonably ensure the safety of the community. *See id.* at 6.

### A. The Nature and Circumstances of the Offense Weigh in Favor of Detention

The first factor directs the Court to consider "the nature and circumstances of the offense charged, including whether the offense ... involves a minor victim." 18 U.S.C. § 3142(g)(1). The charged offense in this case is extremely serious—Mr. Holley is charged with traveling from Maryland to D.C. to have vaginal intercourse with a nine-year-old child.

The Court is aware of only one case in this District, *United States v. Oglesbee,* where a defendant charged with the same offense as Mr. Holley was released to the High Intensity Supervision Program. *See* Minute Entry (July 31, 2020) in Case No. 22-cr-177. The government argues that Mr. Holley's case is distinguishable because the defendant in *Oglesbee* had a medical condition that placed him at a high risk for complications from COVID-19, which is not at issue with Mr. Holley. *See* Gov't Opp'n, ECF No. 20 at 28-29. In all other cases in this District of which the Court is aware, however, defendants charged with the same offense have been detained. *See id.* at 15-16, 27 (citing *United States v. Breeden,* No. 15-MJ-0506, 2015 WL 13310427, at *1 (D.D.C. Nov. 16, 2015); *United States v. Beauchamp-Perez,* 822 F. Supp. 2d 7, 10 (D.D.C. 2011)*; United*

*States v. Johnston,* No. 17-MJ-0046, 2017 WL 4326390, at \*4
(D.D.C. Sept. 28, 2017); *United States v. Brockerman,* No. 25-cr-
133 (Moss, J.); *United States v. Scott*, No. 24-cr-287, 2024 WL
3887394 (D.D.C. Aug. 21, 2024).

The nature and circumstances of the offenses in these cases
are similar to the one before the Court. For example, similar to
the defendant in *Breeden*, in addition to discussing his interest
in sex with children online, Mr. Holley "took the affirmative,
unequivocal step of driving his vehicle into the District of
Columbia to arrive at the appointed time and place," and "but
for the fact that defendant was communicating with an undercover
officer, defendant could have come fact-to face with a minor and
a willing parent." *Id.* at 15 (quoting *Breeden,* 2015 WL 13310427
at \* 7). Additionally*,* Mr. Holley described in detail and
boasted about purported past encounters with minors, and he did
not "equivocate or hesitate or express any apprehension about
the upcoming meeting." *Id.*

In *Scott*, the court denied release to a defendant charged
with nearly identical conduct. *Scott*, 2024 WL 3887394, at \*7.
The defendant in *Scott* similarly engaged in chat discussions
with the UC online, described how he wanted to sexually abuse a
minor girl, and traveled from Maryland to D.C. to meet with the
UC. *Id.; see also Beauchamp-Perez,* 822 F. Supp. 2d at 10
(defendant traveled to meet a 12-year-old girl); *Johnston,* 2017

WL 4326390, at *4 (defendant planned to meet with UC's purported nine-year-old daughter and admitted to past sexual encounters with children); *United States v. Brockerman,* No. 25-cr-133 (defendant planned to meet with fictitious child via online chat).

Mr. Holley argues that despite the graphic descriptions of his past encounters, these conversations are merely common sexual fantasies in online environments. *See* Def.'s Reply, ECF No. 26 at 14-23. However, the Court notes that when asked by the UC if the proposed plan was "not fantasy right," Mr. Holley responded "Correct. Real life. I have experience with daughters and fathers, you found the right bull for the job." Aff. in Supp. of Criminal Compl., ECF No. 2-1 at 4. Mr. Holley also told the UC that the "[b]est part is we can make it a regular thing. And train her for life as a slut." *Id.* at 5.

In addition to the conversation between Mr. Holley and the UC, the records from Mr. Holley's electronic devices provide examples of Mr. Holley and other individuals discussing sexually abusing children. *See generally* Gov't Suppl., ECF No 24. In a conversation with S-6, Mr. Holley describes in graphic detail over the course of 225 pages of records how he will sexually abuse S-6's children, including wearing a mask while the two film child pornography. *Id.* at 3-4. Mr. Holley and S-6 exchanged real-life photos of what S-6 says is his daughter's genitalia

and a video of what Mr. Holley claims to be "the son of a friend" performing oral sex on him, though the government cannot discern the age of the individuals in the images. *Id.* at 4-5.

In his messages with S-6, Mr. Holley became more aggressive and demanding of in-person contact, but S-6 stopped responding. *See id.* Mr. Holley continued to send S-6 text and voice messages demanding their address so that he could rape S-6's wife and children. *See id.* Mr. Holley argues that his reactions in this online exchange "need not indicate an intention to pursue the interaction in real life" and can be attributed to his frustration with a long-term online conversation ending. *See* Def.'s Reply, ECF No. 26 at 23.

While it is possible that some of Mr. Holley's descriptions of past encounters are fantasy or empty boasting, the Court agrees with the government's point that "the conversation he had with the UC and his subsequent actions were reality," and that he "discussed abusing a child and then traveled into Washington, D.C. with that intent, bringing with him lubricant, condoms, and a mask to wear while filming the abuse." Gov't Surreply, ECF No. 28 at 4. Mr. Holley therefore escalated those fantasies into what, but for the intervention of law enforcement, would have been the sexual abuse of a nine-year-old girl. This reflects a transition from fantasy to concrete action. *See* Gov't Surreply, ECF No. 28 at 4-5.

The nature and circumstances of the offense weigh in favor of detention. Mr. Holley's conduct was not limited to graphic and violent online conversations about sexually abusing minor children, but rather, he acted upon these conversations by traveling to actually meet with the purported child and parent, bringing with him sex toys, condoms, and a mask to hide his face during the intended filming of the abuse.

### B. The Weight of the Evidence Against Mr. Holley Weighs in Favor of Detention

The second factor directs the Court to consider "the weight of the evidence" against the defendant. 18 U.S.C. § 3142(g)(2). The evidence proffered against Mr. Holley is strong. In addition to the conversations with the UC in which he discussed sexually abusing a fictitious child, Mr. Holley executed a plan to meet the UC in person, bringing with him a variety items to use during the encounter, including lubricant, sex toys, and a mask to wear during in the interaction so that the two could film child pornography. *See* Gov't Opp'n, ECF No. 20 at 17. The evidence also includes text conversations between Mr. Holley and other individuals in which he claims that he had had sex with children ages 8, 10, 11, 13, and 16. *See* Gov't Opp'n, ECF No. 20 at 9-10.

Mr. Holley argues that the Court should consider the lack of additional evidence in this case in weighing the evidence

against him. *See* Mot. to Reinstate, ECF No. 18 at 9. He specifically points to the fact that there were no child pornographic images exchanged, nor was there an "identifiable victim," i.e., a real child he had direct contact with, as was the case in *United States v. Willis,* No. 22-MJ-122 (Merriweather, J.) (Howell, J.), where the court released the defendant. Def.'s Reply, ECF No. 26 at 3.

But other courts in this District have noted that it is uncertain that a "lack of *more* incriminating evidence constitutes 'evidence' that rebuts the presumption arising from the undisputed facts of the case." *Breeden,* 2015 WL 13310427, at *7. Furthermore, in cases where courts denied release, there were also no pornographic images exchanged and the child was similarly fictitious. *E.g., id.; Scott,* 2024 WL 3887394, at *7; *United States v. Brockerman,* No. 25-cr-133. Therefore, the Court will rely only on the proffered facts, rather than the absence of other facts, in assessing the weight of evidence against Mr. Holley.

The weight of the evidence favors detention. The government's case is supported by the communications between Mr. Holley and the UC, his actual in-person meeting with the UC, and the physical evidence seized from his car, which tends to corroborate his intent to sexually abuse the UC's purported nine-year-old daughter. The government also supports its case

17

with evidence of Mr. Holley's activity on the fetish website for at least two years.

### C. The History and Characteristics of Mr. Holley Weigh In Favor of Detention

The third factor directs the Court to consider "the history and characteristics" of the defendant, including the defendant's "community ties," "family ties," "history relating to drug or alcohol abuse," "criminal history," and "record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

Mr. Holley states that he has "strong ties to the community and has a strong supportive network. He has no history of drug or alcohol use. He has no record of failing to appear at court proceedings." Mot. to Reinstate, ECF No. 18 at 10. Mr. Holley provides no elaboration on these assertions, nor does he provide any documents pertaining to his history or characteristics. *See generally id.*; Def.'s Reply, ECF No. 26.

The government acknowledges that Mr. Holley does not have a criminal history but argues that "there is reason to believe that he has engaged in criminal activity prior to his conduct in this case." Gov't Opp'n, ECF No. 20 at 19. The government points to Mr. Holley's statement to the UC that he had sexually abused a ten-year-old girl, that he had "experience" with fathers and daughters, that he told two women that he had experience sexually abusing children, and that he sent a photograph of a

clothed prepubescent child whom he claimed was a prior victim. *Id.* The government also points to Mr. Holley's "use of common language and knowledge of information associated with individuals who sexually abuse children" and the fact that he brought condoms, lubricant and multiple sex toys to the meeting with the UC. *Id.*

Mr. Holley does not specifically respond to this argument, but in the context of arguing that his online conversations do not prove that he poses a danger to the community, he argues that the conversations are mere fantasy. *See* Reply, ECF No. 26 at 14-21.

Mr. Holley's lack of criminal history weighs in his favor. However, "the absence of criminal history alone cannot rebut the statutory presumption of dangerousness where the surrounding circumstances are so indicative of culpability." *Scott*, 2024 WL 3887394, * 5 (citing *Breeden*, 2015 WL 13310427, at *7 (defendant with no criminal history detained for dangerousness); *Beauchamp-Perez*, 822 F. Supp. 2d at 10 (same)). Even if some of Mr. Holley's online communications were "mere fantasy," in other online communications he stated that he had sexually abused children in the past and sought to do so in the future. His descriptions of what he said that he had done in the past and what he would like to do in the future are graphic and violent. And although the support of his mother, asserted lack of alcohol

or drug abuse, and his appearance at a single hearing—the
September 18, 2025 hearing before Chief Judge Boasberg
(following his release by Magistrate Judge Sharbaugh on
September 15, 2025)—along with the lack of criminal history—
weigh in his favor, he has not provided any elaboration on his
asserted "strong ties to the community and . . . strong
supportive network." Mot. to Reinstate, ECF No. 18 at 10. He has
not provided any information about his education or employment.
Other than the support of his parents, he has not provided any
elaboration of or letters of support attesting to his community
ties and supportive network. Furthermore, during his custodial
interview, he claimed that he had traveled to D.C. to find out
more about the UC to report him to law enforcement, a claim
contradicted by the condoms, lubricant, and sex toys found in
his car and therefore shows a readiness to be deceitful.

The Court credits Mr. Holley's parents' willingness to
serve as his custodians. However, on balance, the Court finds
that Mr. Holley's history and characteristics weigh in favor of
detention.

### D. The Nature and Seriousness of Danger Release Would Pose to Any Person Cannot be Reasonably Mitigated by the Proposed Conditions

The final factor directs the Court to consider "the nature
and seriousness of the danger to any person or the community
that would be posed by the [defendant's] release." 18 U.S.C. §

142(g)(4). The danger Mr. Holley poses to the community is presumed under the statute, *see* 18 U.S.C. § 3142(e)(3)(E); and he must present "credible evidence that he does not pose a danger to the community." *Breeden*, 2015 WL 13310427, at *7.

Mr. Holley argues that "[t]he Court should reinstate the release Order because its strict conditions adequately protect against any threat to the community." Def.'s Reply, ECF No. 26 at 2. Mr. Holley points to other cases in this District where release was ordered despite a greater risk of future dangerousness, *see id.* at 2-7; and argues that the cases relied on by the government where detention was ordered are distinguishable, *see id.* at 8-14. Finally, and as mentioned above, Mr. Holley argues that the online conversations the government points to as evidence of the danger he poses to the community are "non-dangerous online fantasy discussions of various uncommon sexual ("fetish") interests." *Id.* at 14-23.

The Court credits Magistrate Judge Sharbaugh's careful crafting of strict conditions designed to mitigate the risk. However, as explained above, he did not have before him the online conversations that were later found on Mr. Holley's devices.

The Court is not convinced that the strict conditions imposed adequately protect the community for several reasons. The Court does not doubt the sincerity of Mr. Holley's parents

nor their ability to comply with the conditions that require
their cooperation and commends them for their willingness to
serve as his custodians. He is fortunate to have supportive
parents willing to make significant sacrifices for him in the
hope that the Court will release him. However, and as other
courts have noted, there are "practical reasons" that release to
third party custodians cannot always reasonably assure the
mitigation of those risks. *See United States v. Cunningham,*
Order, ECF No. 54 in Case No. 23-CR-7 at 9 (denying release
despite family members' willingness to serve as custodians
because it is "unrealistic" to expect proposed custodian to
conduct around the clock supervision). It is simply not possible
for Mr. Holley's parents to supervise him 24 hours a day, seven
days a week.

The conditions imposed by Magistrate Judge Sharbaugh
included, among other things, an alarm system that sets off
alerts when one enters or exits the home and required Mr. Holley
submit to GPS location monitoring. *See* Order, ECF No. 9 at 3.
Regarding the home alarm system, counsel for Mr. Holley
explained at the Hearing that if Mr. Holley were to leave the
home, his parents would receive an alert, and they would then
need to contact law enforcement. *See* Hr'g Tr. at 26:2-14. As to
the GPS monitoring, Pretrial informed the Court at the Hearing
that if Mr. Holley were to cut off the GPS after business hours

or over the weekend, they would not become aware of it until the next business day. *See id.* at 27:10-28:16. Were that to occur, Pretrial would request a warrant from a judge, and upon the issuance of the warrant, a warrant squad would begin to search for him, *id.* at 29:11-14; all of which could take "a couple of hours," *id.* at 30:6-7. Given this lag time, it is possible that Mr. Holley could leave the home, obtain an Internet-connected device, hide it in the home, and use it while his parents are asleep or otherwise not observing him. Pretrial confirmed at the Hearing that home searches are "cursory"; they are not warrant searches where law enforcement, for example, opens drawers and other containers. *Id.* at 42:14-24. Mr. Holley could therefore obtain and conceal a new Internet-connected device despite the conditions. The Court also notes that Mr. Holley's parents reside within walking distance from both an elementary and middle school. *Id.* at 17:15-24. The information provided at the Hearing indicates that if Mr. Holley were to cut off the GPS and leave the home overnight or in the early morning, he could walk to the schools before any steps were taken to apprehend him.

Mr. Holley points to other cases where release was ordered despite what Mr. Holley contends was a greater risk of future dangerousness due to the defendants being charged with more serious charges. *See* Def.'s Reply, ECF No. 26 at 2-7. Mr. Holley first cites *United States v. Willis*, No. 22-MJ-122. *See id.* at

23

3. Mr. Willis, an adult male, was alleged to have sent Snapchat messages to the 14-year-old minor victim, who sent him photographs in exchange for money. *See* Statement of Facts, ECF No. 1-1 in Case No. 22-MJ-122 at 1-2. Mr. Willis sent explicit photos of himself, and videos of himself masturbating. *Id.* at 2. However, unlike Mr. Holley, who traveled to D.C. to sexually abuse a nine-year-old child, Mr. Willis did not take any affirmative steps to travel to D.C. *See generally id.* Accordingly, the Court rejects Mr. Holley's argument that Mr. Willis posed a greater risk of future dangerousness.

Next Mr. Holley *cites United States v. Taylor*, No. 21-mj-00699 (Merriweather, J.), and *United States v. Ali*, No. 24-cr-43 (Alikhan, J.). In both, however, release was predicated on underlying health issues. Mr. Taylor suffered from an intellectual disability and was released to home incarceration with the D.C. Department of Disability Services working with a Medicaid-eligible provider to provide habilitation, care, and treatment to him. *See Taylor*, Order, ECF No. 6 in Case No. 21-mj-00699 at 5. Mr. Ali was diagnosed with Stage IV cancer and was undergoing radiation treatment five times per week. *See Ali*, Mot. for Release from Custody, ECF No. 8 in Case No. 24-cr-43 at 1. Mr. Holley has no comparable medical issue. Furthermore, neither Mr. Taylor nor Mr. Ali were alleged to have attempted to meet with their victims. *See Taylor*, Statement of Facts, ECF No.

1-1 in Case No. 21-mj-00699; *see generally* Dkt. in *Ali*, Case No. 24-cr-43.

Finally, Mr. Holley argues that the cases relied on by the government where a defendant was charged with a travel offense and detention was ordered are distinguishable. Def.'s Reply, ECF No. 26 at 8-14. The Court rejects each of Mr. Holley's arguments.

The Court agrees that the distinction Mr. Holley makes with the release order in *Scott* exists—specifically that Mr. Scott's mother and proposed custodian would have had to stop working and rent a home 50 miles from D.C. to supervise him, *see Scott*, 2024 WL 3887394, at * 6; is not present here since Mrs. Holley is retired and Mr. Holley's incarceration would take place at their home. Mot. to Reinstate, ECF No. 18 at 9. However, the court's decision in Scott was largely based on its "question[ing] the ability of *any* third-party custodian to provide the round-the-clock monitoring necessary to ensure absence of 'small[internet-accessible] devices in [the] residence.'" *Scott*, 2024 WL 3887394, at *6 (quoting *Hoppe*, 2024 WL 1990452, at *6). This is the same concern this Court has articulated. The Court also appreciates that while Mr. Scott's family could not finance a psychosexual review and therapy, *id.;* Mr. Holley's family has already retained a professional to provide an evaluation, *see* Reply, ECF No. 26 at 10. The Court credits the Holleys for

25

taking this step, but it remains the case that Mr. Holley could leave the home as explained above.

Mr. Holley contends that *Breeden* is distinguishable because Mr. Breeden's mother would have been his sole third-party custodian, but she was employed and so would have had to work from home using an Internet-connected computer, *see* Reply, ECF No. 26 at 9 (citing *Breeden*, 2015 WL 13310427, at *6); whereas Mr. Holley's mother is retired and does not need to have an Internet-connected computer in the home and so Mr. Holley would not have access to such a computer, *see id.* While the Court appreciates this distinction, it remains the case that, as explained above, Mr. Holley could leave the home, obtain an Internet-connected device, and then return home and hide it from his parent's and Pretrial's view. And the point the Court made above about psychosexual review and treatment applies here as well.

Mr. Holley points to cases where release was denied because, among other things, the evidence demonstrated the defendant's willingness and technical ability to hide their online activity. *See* Def.'s Reply, ECF No. 26 at 8 (citing *United States v. Hoppe*, No. 23-CR-102, 2024 WL 1990452 (D.D.C. May 6, 2024)); *id.* at 10 (citing *United States v. White*, Order, ECF No. 6 in Case No. 24-cr-340 (Friedrich, J.)). While it is true that no such evidence has been introduced in this case, Mr.

Holley has been hiding his on-line activity from his parents, with whom he lived while engaging in the activity. *See* Hr'g Tr. at 12:24-13:4. Mr. Holley briefly points to cases where release was denied where the proposed release conditions were far less robust than those proposed here. *See* Def.'s Reply, ECF No. 26 at 10 (citing *United States v. Martinez*, No. 22-cr-78 (Jackson, J.)); *id.* at 12-13 (citing *United States v. Vides*, No. 24-cr-216 (Howell, J.)); *id.* at 13 (citing *United States v. Blythe*, No. 25-cr-253 (Friedrich, J.)); *id.* (citing *United States v. Brockerman*, No. 25-mj-72 (Merriweather, J.)). The Court has previously acknowledged the robust proposed conditions. However, the Court has also pointed out that Mr. Holley could leave the home, obtain an Internet-connected device, and return and hide it with little difficulty. Finally, Mr. Holley distinguishes *United States v. James Carroll*, No. 24-cr-544 (Mehta, J.), where release was denied to a defendant with a "30+ year record of . . . dangerous compulsivity." Reply, ECF No. 12 at 12. The Court notes, however, that Mr. Holley stated that he is an addict to sex, *see* Gov't Opp'n, ECF No. 20 at 10, 24; and his counsel acknowledged at the Hearing the possibility of Mr. Holley going to extreme lengths to leave the home to obtain another device, *see* Hr'g Tr. at 32:13-21.

Finally, he argues that "the chats in which Mr. Holley engaged reveals non-dangerous online *fantasy* discussions of

various uncommon sexual ('fetish') interests." Def.'s Reply, ECF No. 26 at 14. As an example of "fantasy talk common to fetish sites," he states that "[i]f in fact the parents of a 10 year old girl held her legs apart while urging an 18 year old 'bull' to keep raping her while she cried, there is absolutely no way that '6 strokes in' such a poor child was giggling, laughing, and 'loving' that experience." Reply, ECF No. 26 at 19. Mr. Holley's support for his argument consists of his counsel's analysis of the discussions; he provides no authoritative support for conclusions such as "the conversation is fairly obviously the type of fantasy talk common to fetish sites," *id.*; or "as seems common in the online world of illicit contact, Mr. Holley often 'ramped up' the fetish lingo according to the particular interests of the person with whom he was at the moment engaged," *id.* at 22; or "[i]t is not uncommon for people, having become accustomed to one form of pornography, to require more and more 'extreme' forms of the object of their arousal in order to achieve the same arousal which, when the same object was new, could be achieved with less extreme forms," *id.*

The government acknowledges that some of the messages appear to be sexual fantasy, but points to evidence that Mr. Holley's interest in sexually abusing children goes beyond fantasy. *See* Gov't Surreply, ECF No. 28 at 3. For example, the government points to S-1's statement that her discussion of

sexually abusing a child was fantasy, to which Mr. Holley responded that he would make any fantasies she wanted "to come true, I will make come true." *Id.* at 3-4. Furthermore, Mr. Holley sent repeated voice memos to S-6 asking for S-6's address so Mr. Holley could have sex with S-6's wife and children. *Id.* at 4.

Even if some of Mr. Holley's online communications were "mere fantasy," in other online communications he stated that he had sexually abused children in the past and sought to do so in the future. Specifically, Mr. Holley claims that he had had sex with children ages 8, 10, 11, 13, and 16, *see* Gov't Opp'n, ECF No. 20 at 9-10; and describes in graphic and violent terms that he would like to rape an individual's seven-year-old daughter, *id.* at 10. It includes text conversations with another individual in which Mr. Holley described in graphic and violent terms that he sought to orally, vaginally and anally rape female and male children ages 16, 14, and 11, and choke and slap them. *See* Gov't Suppl., ECF No. 24 at 3-4.

For these reasons, Mr. Holley presents a serious danger to the community, particularly to children. And the proposed conditions cannot mitigate that danger since it is not possible for Mr. Holley's parents to observe him 24 hours a day, seven days a week.

**IV.  Conclusion**

Mr. Holley has failed to rebut the presumption of dangerousness. The evidence he points to are the rigorous release conditions combined with his argument that the online communications are "non-dangerous online *fantasy* discussions." The Court has explained above why the proposed conditions cannot mitigate the danger posed by release to the community. And even if some of Mr. Holley's online discussions were fantasy, his descriptions of past violent encounters with children and statements that he seeks to violently rape young children and teenagers demonstrate his dangerousness. The government has therefore shown by clear and convincing evidence that no conditions can reasonably assure the safety of the community. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **December 3, 2025**